IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TINA KANGAIL, )
)
　　　　Plaintiff, )
) No. 04 C 2217
v. )
) HONORABLE CHARLES R. NORGLE
JO ANNE B. BARNHART, )
Commissioner of the Social Security )
Administration, )
　　　　Defendant. )

**OPINION AND ORDER**

CHARLES R. NORGLE, Sr., District Judge

Plaintiff Tina Kangail ("Kangail") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "SSA") denying her applying for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act. Before the court are the parties' cross-motions for summary judgment.[1] For the following reasons, the court grants the Commissioner's motion and denies Kangail's motion.

---

[1]Although styled as motions for summary judgment, the motions are actually a review of the administrative record. Although Northern District of Illinois Local Rule 56.1, concerning motions for summary judgment, does not expressly except either administrative review cases generally or social security disability cases in particular, these Rules do not appropriately apply to such cases. See, e.g., Davis v. Shalala, No. 94 C 4162, 1995 WL 54449, *1 (N.D. Ill. 1995); see also Local Rules 8.1 (Social Security Cases) and 16.1 (Pretrial Procedures; Standing Order Establishing Pretrial Procedure). The facts are taken from the Certified Copy of Administrative Record. [11-1].

1

# I. BACKGROUND

## A. Facts

Between 1992 and 2003 Kangail was employed in various capacities, and moved from job to job with great frequency. Kangail hypothesized that she had at least twenty jobs over the course of two years. From 1992 until 1994, Kangail worked as a data entry clerk. According to her, that was the only job she held that last longer than nine months. From April 1997 until January 1999, Kangail worked as a waitress at Denny's, yet was fired twice for absenteeism and other disciplinary problems. Kangail was subsequently unemployed between January 1999 and June 2000. Then, in July 2000, Kangail worked for two months as a telemarketer, until she quit in October to take a better paying job as a cashier in a grocery store. Kangail left that job after eight months in July 2001, to pursue another job as a waitress. She was eventually fired from that job in January 2002. From March until September 2002, Kangail worked at another restaurant, and also worked at a pancake house from November 2002 until her administrative hearing in February 2003.

During her employment career, Kangail had documented problems with drugs and alcohol. Beginning in January 1998, Kangail was hospitalized for depression. Dr. Teas, Kangail's attending physician, diagnosed her with chemical dependency, and bipolar disorder. Dr. Teas believed that Kangail's drug and alcohol dependency were not as severe as her mood disorder. According to the doctor, Kangail's mood improved while she was on her medication. In May and June of 1998, Kangail was evaluated by Dr. Martin, who stated that Kangail was "doing very well and consistent with her medications." However, between October and December 1999, Kangail underwent counseling at Alexian Brothers Behavioral Health Resources

for acute depression and substance abuse problems. Then, in April 2000, Kangail was treated by another psychiatrist, Dr. Rachman. He concluded that Kangail suffered from bipolar disorder and substance abuse problems.

Kangail's first administrative hearing was held in May 2000. There, Dr. Arden, a psychiatrist, stated that it was his opinion that Kangail had difficulties concentrating and interacting with others in a work setting. He further stated that if Kangail would not abuse alcohol or drugs and stay on her medication, she could perform daily activities. In June 2000, Plaintiff's counsel had Kangail examined by another psychiatrist, Dr. Gelman. Gelman diagnosed Kangail with bipolar disorder, substance abuse problems, and a borderline personality disorder. Furthermore, Gelman stated, while Kangail was eager to seek help, her inability to follow medication treatment plans over eight years of therapy indicated a significant psychological problem. Then, in August 2000, another psychiatrist, Dr. Tsai examined Kangail and stated that she appeared to be in control of her mood, and that Kangail took her medication regularly. Almost one year later, in April and July 2001, Dr. Tsai again examined Kangail and stated that she was taking her new medication, her mood was normal.

However, in June 2002, Dr. Tsai reported that Kangail's depression had returned, she appeared nervous, and had been losing a job as quickly as she found one. At one point, Kangail was hired and fired from four or five waitress jobs within an eight month span. Dr. Tsai completed an evaluation form for Kangail's use in her Social Security disability case. In the form, Dr. Tsai again stated that Kangail had bipolar disorder, depression, and that she was unable to perform in a work environment.

## B. Procedural History

On April 20, 1999, Plaintiff filed a DIB application, which the Administrative Law Judge ("ALJ") initially denied on July 20, 1999. A hearing was held on September 25, 2000 in which the ALJ denied Plaintiff's claim for benefits. Plaintiff filed a Request for Review of the ALJ's decision, and on May 14, 2002, the Appeals Council remanded the case. On October 16, 2003, the ALJ denied Plaintiff's claim for a second time. Plaintiff filed then her Complaint in United States District Court on March 25, 2004. Additionally, the parties have filed cross-motions for summary judgment. Plaintiff filed her Motion on August 12, 2004, and Defendant filed its Motion on September 9. The cross-motions for summary judgment are fully briefed and before the court.

## II. DISCUSSION

As a preliminary matter, "judicial review of any decision by the Commissioner as authorized by Section 405(g), requires that findings of fact must be upheld if they are supported by substantial evidence." Young v. Barnhart, 282 F.Supp. 2d 890, 894 (N.D. Ill. 2003). In reviewing the Commissioner's determination, "this court must look at the entire administrative record, but it may not reweigh the evidence, resolve conflicts, decide credibility questions, or substitute its own judgment for the Commissioner's." Id. The District Court's review is "limited to determining: (1) whether Commissioner applied the correct legal standards in reaching the decision, and (2) whether there is substantial evidence in the record to support the findings." Id. (citing Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The "ALJ's decision typically becomes that of the Commissioner herself." Id at 895. "While

great deference is accorded to the ALJ's determination," the court must "do more than merely rubber stamp the ALJ's decision." Scott v. Barnhart, 297 F.3d 589, 593 (7th Cir. 2002).

Social Security benefits, DIB and/or SSI, are available only to claimants who can establish a "disability" under the terms of the Social Security Act. See 20 C.F.R. § 44.1520(e) (governing claims for disability insurance benefits); 20 C.F.R. § 416.920(e) (parallel regulation governing claims for Supplemental Security Income). The social security regulations provide a five-step sequential analysis to determine whether a claimant is disabled for purposes of eligibility for benefits: (1) the ALJ first asks whether the claimant is presently unemployed; (2) if she is, the ALJ next asks whether the claimant's impairment is severe; (3) if it is, the ALJ asks whether that impairment meets or equals one of the impairments presumed to be disabled, as specified in the pertinent regulations; (4) if it does, the impairment is conclusively disabling, but if it does not, the ALJ asks whether the claimant is able to perform her past relevant work; (5) if the claimant is not able to perform her past relevant work, the ALJ asks whether in light of the claimant's age, education, job experience and functional capacity, the claimant is capable of performing other work that exists in the national economy. See 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits); 20 C.F.R. § 416.920 (parallel regulation governing claims for Supplemental Security Income); see also Barnhart v. Thomas, 540 U.S. 20, 23 (2003); Maggard v. Apfel, 167 F.3d 376, 378 (7th Cir.1999). If at any step a finding of disability or non-disability can be made, the ALJ will not review the claim further. See Thomas, 540 U.S. at 23. The claimant bears the burden of establishing a disability at steps one through four, while the ALJ bears the burden of establishing that the claimant is not disabled at step five. See Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995). With these principal's in mind, we turn to the cross

Motions for Summary Judgment.

### *1. The Commissioner applied the correct legal standard in reaching his conclusion*

The ALJ found that the threshold issue is "whether the claimant is engaged in substantial gainful activity. If so, she cannot be found disabled under the Act." R. at 24. Under the first step of the five-step analysis, a claimant is considered disabled only if she demonstrates an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the ALJ did not conduct an analysis of the remaining four steps because "under the five-part sequential evaluation process, '[a]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled.'" Id. at 886 (quoting Zalweski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985)). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." Id. Kangail was presently employed at the time of the hearing (See R. at 23), and therefore the first step of the analysis must be answered in the negative. As a result, the ALJ only focused on the first two steps of the analysis.

The ALJ, relying on the evidence in the record, found that Kangail was able to hold down a job for a significant portion of time, provided that she did not abuse alcohol or drugs, and took her medication. Therefore, the ALJ found, Kangail was not disabled, as contemplated under the statute; instead her own chemical dependence and refusal to take medication led to her inability to work. See R. at 32. The ALJ reviewed such evidence as Kangail's own testimony, her earnings records, and employment history to arrive at this conclusion. Id. Based on the

proffered evidence, the ALJ found that "the claimant is engaging in 'substantial gainful activity' and that her substantial gainful activity precludes a finding of disability (20 C.F.R. § 404.1520(b) and § 416.920(b))." R. at 32. The ALJ applied the appropriate sections of the Social Security Act, and found that Kangail did not meet the statutory criteria of a disabled person in order to qualify for benefits. Therefore, a reasonable mind can accept these findings as adequate to support a conclusion of a denial of Social Security benefits. See Scott, 297 F.3d at 593. On this analysis, the court will not second guess the ALJ, or decide that the ALJ should have decided the case in a different manner. See Scott, 297 F.3d at 593; see also Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

### 2. *The Substantial Evidence in the Record Supports the ALJ's Findings*

Additionally, the ALJ found the record "persuasive that . . .the medical and other evidence does not establish that she [Kangail] is under a disability." R. at 24. While Kangail had a history of cocaine and alcohol abuse, she also had "lengthy periods of remission, including from 1992 to 1994, which, significantly, coincide with periods of substantial work activity." Id. Therefore, as the ALJ found, when Kangail had not abused drugs or alcohol, and took her medication as prescribed, she was able to work and function in society. Only when Kangail did not take her medication and returned to drugs and alcohol, was she unable to hold down a job or function within society. Additionally, the ALJ found that Kangail's bipolar disorder did not result in any "functional limitations" as long as she took her medication and abstained from using drugs and alcohol. Id. The ALJ based his opinion on the medical and employment records of the case, which included expert testimony from various psychiatrists who treated Kangail. The record included evaluations from April 1998, July 1999, and May 2000. See R. at 25, 28.

Doctors Martin, Tomassetti, and Arden corroborated the diagnosis that if Kangail had stayed on her medication, then she would be able to work and function within society. As a result, the evidence contained in the record is a thorough and detailed evaluation of Kangail's struggle with substance abuse and mental illness over the course of several years. The ALJ discounted the diagnosis made by Doctors Teas, Gelman, Rachman, Tsai, and Hurtado due to contradictory statements made by these doctors. For instance, Dr. Tsai submitted several reports that concluded that Kangail was stable, able to function in society, and was able to control her symptoms. See R. at 27, 366-367, 369-71, 374. Therefore, the record shows that there is substantial evidence to support the ALJ's findings. See Young, 282 F.Supp.2d at 894.

Kangail, on the other hand, argues that because the ALJ's original decision was remanded by the Appeals Council, the second opinion too must be remanded. Pl.'s Mot. for Summ. J. at 21-22. However, this argument is improper because the only decision before this court is the ALJ's final decision. The District Court may only review final decisions of the ALJ, not any intermediate or preliminary administrative decisions. See 42 U.S.C. §§ 405(g) and 1383(c)(3). Therefore, the court will not engage in an analysis of whether the ALJ's decision at the initial hearing was justified. The sole responsibility of this court is to simply uphold the final administrative decision if it is supported by substantial evidence. Scott, 282 F.Supp. 2d at 894. Because the ALJ applied the correct legal standard under 20 C.F.R. § 404.1520(b) and § 416.920(b), and the evidence in the record was substantial to affirm the ALJ's findings, the court must uphold the ALJ's determination.

## III. CONCLUSION

For the reasons stated above, the court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, SR. Judge
United States District Court

DATED: 7-15-05